[No. 18891.   Department One.   January 23, 1925.]

# J. D. COLVIN, *Respondent*, v. AUTO INTERURBAN COMPANY, *Appellant*.[1]

APPEAL (445)—REVIEW—HARMLESS ERROR—MISCONDUCT OF COUNSEL—SHOWING INDEMNITY INSURANCE. In an action for personal injuries inflicted by a stage driver, it is not reversible error that a witness brought out the fact that the stage company carried indemnity insurance, in view of the law requiring it to do so.

EVIDENCE (68)—SECONDARY EVIDENCE—FACTS EVIDENCED BY WRITING. Upon an issue as to whether plaintiff in a personal injury case had assigned his claim to the state and elected to take under the workmen's compensation act, it is error without prejudice to exclude oral testimony as to whether he had made application for compensation, where there was no offer or attempt to prove by competent evidence the contents of the application or proceedings thereon, which were a matter of public record.

HIGHWAYS (52)—USE—AUTOMOBILES—STOPPING VEHICLES ON HIGHWAY—STATUTES—INSTRUCTIONS. Under Rem. Comp. Stat., § 6347, providing that it shall be unlawful for any person to leave any vehicle standing upon the main travelled portion of any highway, unless it is so disabled as to prohibit the moving of the same, a car may be stopped if there is a reasonable excuse or necessity therefor, and a reasonable effort is made to get it as far off the main portion of the travelled portion of the road as the circumstances will permit.

SAME (59)—NEGLIGENT USE—DRIVER OF AUTOMOBILE—INSTRUCTIONS. Where there was a reasonable excuse for stopping and a reasonable effort to take a car as far off the pavement as possible, it is a technical error without prejudice to instruct that the driver had a right, under Rem. Comp. Stat., § 6347, to temporarily stop on the right side of the road if sufficient space was left for the free and safe passage of other vehicles.

HIGHWAYS (59) — NEGLIGENT USE — DRIVER OF AUTOMOBILE—INSTRUCTIONS. It is proper to give instructions which, taken together, simply mean that under all the circumstances it was the duty of the driver of a stage to operate it at such speed and to have it under such control that, by exercising reasonable care, he could or should, by the assistance of his headlights, have seen a truck on the road ahead in time to avoid a collision.

[1]Reported in 232 Pac. 365.

SAME (59). It is not error to instruct that, in case of danger of collision, it was the defendant's duty to use his horn under all proper circumstances.

TRIAL (136)—VERDICT—SPECIAL FINDINGS—DISCRETION. It is discretionary to refuse to submit special interrogatories to the jury.

HIGHWAYS (57)—NEGLIGENT USE — DRIVER OF AUTOMOBILE — EVIDENCE—SUFFICIENCY. The negligence of a stage driver in colliding with a truck which was stopped as far off the right side of the road as possible with its tail light burning, is for the jury, where passengers saw the light, only the left wheels of the truck were on the pavement, and the stage hit it while travelling at a speed estimated at from 18 to 40 miles an hour.

DAMAGES (80)—PERSONAL INJURIES—EXCESSIVE VERDICT. A verdict of $15,000 for injuries sustained by the driver of a truck in an automobile collision, is not excessive, where he was terribly injured, he suffered intense pain, and is permanently injured and unable to do much work.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 5, 1924, upon the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Anthony W. Dolphin (Poe, Falknor, Falknor & Emory, of counsel), for appellant.*

*O. C. Moore, for respondent.*

BRIDGES, J.—Appeal from a judgment in favor of the plaintiff in a personal injury suit.

Early in the evening of a certain day, but after darkness had fallen, the plaintiff was driving his truck westerly along one of the paved highways of eastern Washington. More or less snow was falling. The truck was loaded with a large steel tank, some chains and other similar equipment. From the noise he heard and from the fact that he had been traveling over some rough road, the driver thought he was about to lose his load or part of it. He pulled his truck off the pavement as far as it was safe for him to do and stopped. The two left-hand wheels were still on the pavement,

thus leaving about one-half of the truck on the pavement. Having examined his load--and found it was riding satisfactorily, he lifted the hood of his motor in order, if possible, to detect more clearly a knock which he had heard. He then closed the hood and stood alongside of the motor and in front of the truck, still listening to the knock in his motor, when appellant's large stage, carrying a number of people, ran into the rear of the truck, pushing it over or upon the plaintiff and very seriously injuring him. The truck had been stopped about ten minutes at the time of the collision. The tail light on it was burning. The stage, on approaching the truck, was traveling at an estimated speed of 18 to 40 miles per hour. There was a verdict in favor of the plaintiff for $15,000.

We will discuss the assignments of error in the order in which we find them in the briefs.

(1) When appellant's attorney was cross-examining one of the respondent's witnesses, who had previously testified that he had distinctly seen the tail light on the truck, he was asked whether he had not told a man by the name of Gordon that he did not see the tail light. On redirect examination the attorney for the respondent asked the witness whom Gordon said he represented, and the witness answered that he said he represented an insurance company. The appellant's first assignment of error is based on this incident, claiming that, under *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159, and *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12, the conduct of respondent's counsel requires the granting of a new trial. If necessary to the disposition of this case, we would be disposed to hold that the claimed error does not come within the spirit of the cases cited; but we think they are not controlling here. Our statutes provide that a stage carrying persons for hire must have insurance,

and in the case of *Devoto v. United Auto Transportation Co.*, 128 Wash. 604, 223 Pac. 1050, we held that, in a suit of this character, the plaintiff may join the insurance company with the stage owner as one of the defendants. In other words, the jury was bound to know that the stage in question carried insurance, and the fact that that information was brought out by the examination of a witness could not be prejudicial error. It may be true that the insurance company was liable in this instance for only $5,000; if so, the appellant had a perfect right to show that fact.

(2) The second assignment of error shows an unusual situation. In its answer the appellant had affirmatively pleaded that, prior to the commencement of this suit, the respondent had filed with the department of labor and industries of this state his claim for compensation and had assigned all of his rights thereunder to the state for the benefit of the accident fund, and that by such action he had elected to take under the compensation act and was precluded from maintaining this action. When the respondent himself was on the witness stand, the appellant, during cross-examination, asked him this question: "Mr. Colvin, I wish you would state whether or not you have made written application to the state of Washington to receive the benefits of the workmen's compensation act, compensation." To this question the court sustained an objection. Other like questions were asked of the witness, with like rulings of the court. F. M. O'Leary, a witness for the defendant, testified that he was assistant supervisor of the department of labor and industries in charge of the district of eastern Washington. Appellant asked him this question: "State whether or not you have had negotiations with one J. D. Colvin (plaintiff) relative to his application for benefits under the workmen's compensation law of this

state.'' Objection to this was sustained. He was also asked: ''Mr. O'Leary, do you know whether or not there is in existence a written application made by the plaintiff, Jerry D. Colvin, for the benefit of the workmen's compensation law of this state.'' Objection was sustained. It is clear that the court erred in these rulings. It is perfectly competent to ask one whether he has made a deed, or written a letter, or made application for compensation. These are facts which have nothing to do with the contents of the written instruments. So, also, with reference to the question as to whether Mr. O'Leary had had negotiations with the respondent looking towards the latter's receiving benefits from the workmen's compensation act. In *Hoptowit v. Brown,* 115 Wash. 661, 198 Pac. 370, speaking on a similar question, we said:

''Where the controversy is over the contents of a written document, the document itself is, of course, the best evidence; but where the inquiry is whether there is a document containing a particular matter, any one having knowledge of the fact may testify thereto.''

See, also, 22 C. J. 926; 2 Jones on Evidence, § 434.

We deem it unnecessary to cite further authorities in support of this proposition, or to extend our discussion with reference to the other questions to which objections were made. While we hold that the court committed error by sustaining the objections to these questions, we are equally certain that the errors were not prejudicial. If the questions had been answered in the affirmative, the only information appellant would have obtained was that a written application for compensation had been made by the respondent and that the department of labor and industries had had negotiations with respondent looking towards compensation from its fund. But appellant already had all of

this information. It had pleaded all of that and more in its answer. At no time did the trial court deprive it of the privilege of showing, or attempting to show, that the respondent had made application to the industrial fund or, for that matter, had received compensation therefrom. Indeed, the trial court was continually calling attention to the fact that those were matters of public record and that the proof should be made therefrom. Appellant, having asked the questions above indicated, did not pursue the matter farther, nor did it undertake to offer competent proof that the respondent had made application for, or had received compensation from, the industrial fund, nor in any way to prove the allegations of its affirmative answer. We cannot, therefore, hold that the error committed by the court was prejudicial.

(3) It will be remembered that the respondent stopped his truck standing partly on the paved highway, and that it remained in that position for about ten minutes before the collision. By its instruction number three the court said to the jury:

" . . . and in that respect I instruct you that the plaintiff had a right, under the law of this state, to stop his truck temporarily on the right side of the Apple Way, approaching Spokane, if in doing so there be sufficient space left for the free and safe passage of other vehicles, and the highway to the rear be open, level and unobstructed for a considerable distance."

In *Deitchler v. Ball,* 99 Wash. 483, 170 Pac. 123, we held that "the respondent clearly had the right to stop his car at the place he did, he clearly had a right to occupy a portion of the paved way in attending to whatever was necessary to be done about his car . . ." That case, however, was decided before the passage of § 6347, Rem. Comp. Stat. [P. C. § 222-6],

which is a part of the general road laws of the state and reads as follows:

"It shall be unlawful for any person to leave any vehicle standing upon the main traveled portion of any highway of this state; Provided, that this provision shall not apply to any vehicle so disabled as to prohibit the moving of the same. . . ."

Appellant contends that this statute means that no person shall have the right to stop any vehicles on the main traveled portion of the highway. He would have us read the section thus: "It shall be unlawful for any person to permit any vehicle to stand upon the main traveled portion" of any highway. On the other hand, the respondent contends that the legislative intent was that one should not stop his car on the main traveled portion of a highway and go away from it. He would have us read the statute thus: "It shall be unlawful for any person to go away from any vehicle which has been left standing on the main traveled portion of any highway."

This section is another instance of the elasticity of the English language. Appellant's argument is that, if it means what respondent contends for, then a driver may stop his car on the road and keep it there as long as he likes, providing he stays with it. On the other hand, respondent contends that, if appellant's construction is right, then no one would be permitted under any circumstances or on account of any emergency to stop his car, even for the shortest length of time, on the highway.

A technical interpretation of the statute would probably drive us to accept one of the constructions contended for, but we must keep in mind the evil the legislature was aiming at. It knew that an automobile standing on the main traveled portion of the highway was more or less dangerous to traffic. That danger

would exist to the same extent whether the driver remained with the car or left it there alone. The purpose was to prohibit automobiles from standing on the highway. Keeping this purpose in view, the construction given by both of the parties hereto is substantially right; that is, that drivers must not suffer their automobiles to stand on the main traveled portion of the road whether they stay with them or not. Nor will such a reading of the statute make it unlawful to stop an automobile even for an instant or for any purpose on any portion of the highway, unless it is "so disabled as to prohibit the moving" of it. We know that on many of our highways one would be required to run his automobile mile upon mile before a place could be found where the machine could be entirely removed from the pavement. The statute must be given a reasonable and workable construction. If there is proper excuse or necessity for stopping the car, it will be sufficient if a reasonable effort be made to get it entirely off the main traveled portion of the road, or as nearly so as the circumstances will permit.

Giving the statute this construction, it seems plain that the instruction under discussion was technically wrong. The substance of it was that the respondent had a right to stop his car on the right-hand side of the main traveled portion of the road. It eliminated the idea that there must be some reasonable cause for stopping the car and that a reasonable effort must be made to get it entirely off the main traveled portion of the road, or as nearly so as circumstances will permit. But, under the undisputed testimony in this case, it seems to us that it is highly improbable that the jury could have been misled, because the instruction, while abstractly too narrow, met the facts as they are disclosed by the testimony. It is undisputed that the respondent thought, and had reason to think, he was

about to lose his load; consequently, there was a reasonable excuse for stopping. It is also undisputed that he pulled off the road as far as he could without running the risk of going into a deep ditch.

For these reasons we are of the opinion that the instruction, while technically wrong, did not prejudice any one's rights.

(4) We do not think there is any merit in the contention that instructions one and three amount to comments on the evidence.

(5) It is next contended that instructions four and nine did not state the law. By instruction number four the jury was told that, under all the circumstances as shown by the testimony, it was the duty of the driver of the stage

"to operate his vehicle at such rate of speed and to have the same under such control as would enable him, in the exercise of ordinary care, to bring his stage to a stop within a distance at which an object ahead on the straight and unobstructed highway becomes discernible and plainly disclosed by the headlights with which motor vehicles are required to be equipped by the laws of this state. . . . "

Instruction number nine was to the effect that, under all the surrounding circumstances, it was the duty of the driver

"to have his stage under such speed and control as would permit him to handle his stage safely and without a collision, after he could and should have discovered plaintiff's truck, independent of the question of whether there was a proper tail light on the truck or not. If, under this instruction, defendant's driver, within the spread of his headlights, could and should have discovered plaintiff's truck in time to avoid running into it, then the defendant would be liable to the plaintiff for the injury resulting from the collision, whether plaintiff's truck had a proper tail light or not."

We need not discuss those features of these instructions which seem to indicate that the plaintiff might recover even though he did not have any tail light on the truck. The jury by a special verdict found that the tail light was burning.

Appellant contends that these instructions impose upon the driver of the stage the duty to keep it "under such speed and control at all times as would enable it to stop within the distance disclosed to view by his headlights." If the court had so informed the jury, an exceedingly interesting question would be raised, but we are convinced the instructions cannot be so read. While they are not very happily worded, yet, taking them together, they simply mean that, under all of the surrounding circumstances, it was the duty of the driver of the stage to operate it at such speed and have it under such control as that, by exercising reasonable care, he could stop it after he could or should, by the assistance of his headlights, have seen the truck on the road ahead of him. This is far from telling the jury that the stage driver was bound under all the circumstances to so control his car as that he could stop it within the radius of his lights. We do not believe these instructions were erroneous.

(6)   By instruction number six the court told the jury that it was the duty of the stage to be equipped with suitable signalling devices and that it was also the duty of the driver to use them in case of danger of collision, and for failure so to do he would be guilty of negligence. If this instruction had told the jury that, if the driver of the stage did not sound his horn, he would be guilty of negligence, then the question raised by the appellant would be involved. But the instruction went no farther than to advise the jury that it was the duty of the driver to use his horn under all proper circumstances. There was no error in this.

(7) We may under this head dispose of several additional assignments of error. The appellant requested various additional instructions to be given. It would not serve any useful purpose to discuss these in detail; suffice it to say that in so far as they stated the law they were covered by those given by the court. Complaint is also made that the court refused to submit certain special interrogatories to be answered by the jury. These matters are always in the sound discretion of the court, and we cannot say that that discretion was abused in this instance.

(8) We are of the opinion that the evidence was sufficient to carry the case to the jury and that the court was right in refusing to nonsuit the respondent or grant the motion for judgment notwithstanding the verdict. What we have said in the previous portions of this opinion will be sufficient to show that we are of the view that the court did not err in refusing to grant a new trial.

(9) Complaint is made that the verdict (which was for $15,000) was excessive. The respondent was terribly injured. Several bones were broken. Ever since the accident he has suffered intense pain. One leg is materially shorter than the other. There was ample testimony to the effect that he will never be able to do much work, particularly hard labor, and that the injury is permanent. While the verdict is large, we cannot say that it is excessive.

The judgment is affirmed.

TOLMAN, C. J., MAIN, and HOLCOMB, JJ., concur.