# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00730-COA

JOSEPH CARTER                                                          APPELLANT

v.

C&S CANOPY, INC. AND TY BALLEW                                         APPELLEES

DATE OF JUDGMENT:                06/23/2022
TRIAL JUDGE:                     HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:       HANCOCK COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         ROGEN K. CHHABRA
                                 JOHN D. GIDDENS
ATTORNEYS FOR APPELLEES:         L. CLARK HICKS JR.
                                 R. LANE DOSSETT
NATURE OF THE CASE:              CIVIL - PERSONAL INJURY
DISPOSITION:                     AFFIRMED - 03/05/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., GREENLEE AND McCARTY, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Joseph Carter was injured when an eighteen-wheeler in which he was a passenger sideswiped a fixed-body truck that was parked on the shoulder alongside Interstate 10 and out of the lanes of travel. Carter sued the fixed-body truck's driver, Ty Ballew, and Ballew's employer, C&S Canopy Inc. (C&S), for negligence. Following discovery, the circuit court concluded there was no evidence that Ballew or C&S was negligent or that their alleged negligence caused the crash. Accordingly, the circuit court granted the defendants' motion for summary judgment. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 2, 2017, Ty Ballew, an employee of C&S, was driving a commercial

fixed-body truck on Interstate 10 in Mississippi. Around 3:30 p.m., the truck "started running sluggish and lost power," and Ballew pulled off on the shoulder of the interstate. After talking to his supervisor, Heath Chambers, Ballew placed three warning triangles at intervals behind the truck. Ballew took a photograph of the truck with the warning devices and sent it to Chambers before going to a hotel.

¶3.     Around 1:30 a.m. on January 3, 2017, an eighteen-wheeler driven by Leslie Pecor approached Ballew's truck. Carter was asleep in the sleeper berth of the eighteen-wheeler at the time. For unknown reasons, Pecor's truck veered out of its lane and sideswiped Ballew's truck. Carter was injured in the crash.

¶4.     Carter later asked Pecor "what happened," but according to Carter, Pecor "didn't really want to talk about it." Pecor later died from an unrelated cause. Thus, a dash-camera video from Pecor's truck is the only probative evidence regarding the cause of the crash.

¶5.     In December 2019, Carter sued Ballew and C&S. In October 2021, the defendants moved for summary judgment, arguing that Carter was unable to establish that either defendant breached a duty or that any alleged breach proximately caused the crash.

¶6.     In response, Carter submitted an affidavit from Adam Grill, a truck driving expert. Grill opined that Ballew "violated the Federal Motor Carrier Safety Regulations, state statute and industry standards when he parked and left unattended the truck on the paved portion of the highway." Grill went on to say that Ballew "should have moved the truck to the nearest place where repairs [could] safely be effected" and that Ballew "incorrectly placed the warning devices[] behind the truck." Grill stated that Ballew's actions "caused a foreseeable

2

danger to the motoring public and placed Mr. Carter in danger of harm." Grill also opined that C&S violated state and federal law and industry standards by allowing "Ballew to park and leave unattended the truck on the paved portion of the highway" and that C&S failed to properly train or instruct Ballew regarding the placement of the reflective triangles. The defendants filed a motion to strike Grill's affidavit, arguing that his opinions failed to satisfy the requirements of Mississippi Rule of Evidence 702.

¶7. After a hearing, the circuit court granted the defendants' motion for summary judgment, holding that there was no genuine issue of material fact, no evidence that the defendants breached any duty, and no evidence that any alleged breach proximately caused the crash. The circuit court reasoned,

> [T]he video demonstrates [the warning] devices were in place at the time of the accident, and nothing in the record demonstrates how such devices did not comply with any requirements. Moreover, there is an analytical gap in the evidence demonstrating how a purported failure proximately contributed to the cause of the accident in this case.

¶8. The circuit court also granted the defendants' motion to strike Grill's affidavit, finding that Grill did not address causation, his "opinions [were] not scientifically reliable," and his opinions were not "helpful" to the extent he merely interpreted the video of the crash. The court also noted that it had reviewed all of Grill's opinions and that even if his affidavit "was not stricken, his opinions . . . would not create a genuine issue of material fact that would preclude summary judgment." Carter filed a notice of appeal.

## ANALYSIS

¶9. We review an order granting summary judgment de novo, viewing the evidence in the

3

light most favorable to the nonmoving party. *Karpinsky v. Am. Nat'l Ins.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). Summary judgment "shall" be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "When the plaintiff, as in this case, bears the burden of proof at trial, a defendant may elect to move for summary judgment by identifying deficiencies in the plaintiff's evidence." *Maxwell v. Baptist Mem'l Hosp.-DeSoto Inc.*, 15 So. 3d 427, 433 (¶15) (Miss. Ct. App. 2008).

¶10. In responding to a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). "[S]ummary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Buckel v. Chaney*, 47 So. 3d 148, 153 (¶10) (Miss. 2010) (quotations marks omitted). To recover in a negligence action, the plaintiff must prove (a) a duty the defendant owed him, (b) a breach of that duty, (c) causation, and (d) damages. *Double Quick Inc. v. Moore*, 73 So. 3d 1162, 1166 (¶11) (Miss. 2011). Therefore, the plaintiff must respond to a motion for summary judgment "by producing supportive evidence of *significant* and *probative* value; this evidence must show that the defendant breached the established standard of care and that such breach was the proximate cause of her injury." *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*,

4

564 So. 2d 1346, 1355 (Miss. 1990). When the nonmoving party "fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial and the moving party is entitled to judgment as a matter of law." *McClinton v. Delta Pride Catfish Inc.*, 792 So. 2d 968, 973 (¶9) (Miss. 2001) (quoting *Wilbourn v. Stennett, Wilkinson & Ward*, 687 So. 2d 1205, 1214 (Miss. 1996)).

¶11. On appeal, Carter argues that Ballew negligently continued to drive a "sluggish" truck down the interstate rather than exiting; that C&S negligently failed to have the truck towed sooner; that Ballew violated Federal Motor Carrier Safety Regulations (FMCSRs) by placing emergency reflective triangles at incorrect distances behind his truck; that "Ballew broke the law" by parking the disabled truck on the shoulder of the interstate; that C&S lacked authority to operate as a "for-hire motor carrier"; that C&S failed to train Ballew; and that these various acts or omissions caused the subject crash. We address Carter's various arguments in turn.

¶12. Carter first argues that Ballew negligently continued to drive a "sluggish" truck down the interstate instead of exiting the interstate at the first sign of engine trouble. However, the only evidence Carter cites in support of this argument is the following testimony of Ballew's supervisor, Chambers:

> Q.    What did [Ballew] tell you about what the truck was doing or how it had broken down? Did he describe that for you?
>
> A.    He had just told me that the truck had started running sluggish and lost power.

Carter produced no evidence that the truck ran "sluggish" for any period of time or that

Ballew failed to take advantage of an earlier opportunity to exit the interstate. Accordingly, this argument is without merit.

¶13. Next, Carter argues that the defendants negligently failed to get the truck towed sooner. However, Carter produced no evidence that the truck could have been towed sooner or that the defendants were in any way negligent in their efforts to get it towed. Because Carter failed to produce any evidence on this issue, the argument does not create any genuine issue of material fact.[1]

¶14. Next, Carter argues that Ballew violated the FMCSRs by improperly placing the warning triangles behind his truck. Specifically, Carter alleges that Ballew violated 49 C.F.R. § 392.22 "by placing the warning triangles with only 162.05 feet of warning to impact rather than 230 feet as required by these same regulations." There are two difficulties with this argument. First, Carter's claim that the first warning triangle was placed 162.05 feet from Ballew's truck does not appear in the record. Rather, Carter's appellate counsel calculated that figure based on his review of the crash video, which appears to show Pecor's truck passing the first warning triangle about 1.75 seconds prior to impact while traveling at

---

[1] In the defendants' motion for summary judgment and during the hearing in the circuit court, defense counsel stated that Chambers had testified that he tried to get the truck towed that afternoon but was unable to schedule a tow until the next morning. In the circuit court, Carter did not dispute this description of Chambers's testimony, but on appeal Carter notes that the defendants failed to attach the relevant pages of Chambers's deposition to their motion for summary judgment. The absence of this evidence does not help Carter. To defeat a motion for summary judgment, "*the plaintiff* must . . . produc[e] supportive evidence of *significant* and *probative* value; this evidence must show that the defendant breached the established standard of care and that such breach was the proximate cause of her injury." *Palmer*, 564 So. 2d at 1355 (first emphasis added). It was not the defendants' burden to prove that they satisfied the standard of care; it was *Carter's* burden to come forward with evidence of negligence.

a speed of 63 miles per hour.[2]

¶15.    Second, the alleged 230-foot requirement is a misstatement of the cited federal rule, which provides in relevant part:

(b) Placement of warning devices—

(1) General rule. Except as provided in paragraph (b)(2) of this section, whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops, the driver shall, as soon as possible, but in any event within 10 minutes, place the warning devices required by § 393.95[3] of this subchapter, in the following manner:

(i) One on the traffic side and 4 paces (approximately 3 meters or 10 feet) from the stopped commercial vehicle in the direction of approaching traffic;

(ii) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction of approaching traffic; and

(iii) One at 40 paces (approximately 30 meters or 100 feet) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction away from approaching traffic.

(2) Special rules—

. . . .

(v) Divided or one-way roads.  If a commercial motor vehicle is stopped upon the traveled portion or the shoulder of a divided or one-way highway, the driver shall place the warning devices required by paragraph (b)(1) of this

---

[2] Carter's appellate counsel calculates that 63 miles per hour equals 92.6 feet per second and that an object moving that speed would travel 162.05 feet in 1.75 seconds.  We calculate that 63 miles per hour equals 92.4 feet per second and that an object moving at that speed would travel 161.7 feet in 1.75 seconds.

[3] The rule permits the use of emergency reflective triangles. 49 C.F.R. § 393.95(f)(1).

section, one warning device at a distance of 200 feet and one warning device at a distance of 100 feet in a direction toward approaching traffic in the center of the lane or shoulder occupied by the commercial motor vehicle. He/she shall place one warning device at the traffic side of the commercial motor vehicle within 10 feet of the rear of the commercial motor vehicle.

49 C.F.R. § 392.22(b). Interstate 10 is a divided highway. Therefore, under section 392.22(b)(2)(v), the three triangles should have been placed approximately 200 feet, 100 feet, and 10 feet behind Ballew's truck in the direction of approaching traffic.

¶16. Carter's argument based on the federal rule fails to create any genuine issue of material fact. To begin with, a party opposing summary judgment should specifically identify the disputed material facts that preclude summary judgment. We do not expect circuit courts to "ferret[] through the record" for "unadvertised factual issues." *Est. of Jackson v. Miss. Life Ins.*, 755 So. 2d 15, 22 (¶28) (Miss. Ct. App. 1999). In this case, the defendants' motion for summary judgment cited the relevant federal regulation and specifically argued that the video showed "that the warning triangles were appropriately spaced and clearly visible." Indeed, the video clearly shows three emergency triangles placed at intervals behind Ballew's truck. In response to the defendants' motion, Carter simply asserted, without elaboration, that the triangles were "improperly" or "incorrectly" placed. We do not fault the circuit court for not attempting to calculate the distance between Ballew's truck and the first triangle when Carter himself failed to make that calculation and failed to identify the distance as a disputed material fact. *See id.*

¶17. But even if we were to assume that Ballew placed the first triangle 162.05 feet from the rear of his truck, that fact would not preclude summary judgment. In *Sprayberry v.*

8

*Blount*, 336 So. 2d 1289 (Miss. 1976), a car crashed into the rear of a tractor-trailer rig that was slowly pulling onto the shoulder of a highway late at night due to engine trouble. *Id.* at 1291-92. The car's driver was killed, and his wife was seriously injured. *Id.* at 1291. In the wife's negligence action against the rig's driver and owner, our Supreme Court held that the defendants were entitled to a directed verdict, reasoning:

> [The car driver's] negligence was the sole proximate cause of the injuries to his wife. . . . No one knows why [the car's driver] failed to see the [rig] in front of him or failed to drive his vehicle into the other lane of traffic. It can only be concluded that he failed to keep a proper lookout and did not see what he should have seen or did not have has vehicle under such control so as to turn it left in time to avoid striking the tractor-trailer.

*Id.* at 1294.

¶18. Likewise, "[n]o one knows why" Pecor allowed his truck to leave his lane of travel and crash into Ballew's parked truck. Based on the limited record evidence, we can only conclude that Pecor fell asleep or failed to pay attention. But whatever the precise nature of Pecor's negligence, there is no evidence that the specific placement of the first reflective triangle caused this crash. That is, there is no evidence that the crash would have somehow been avoided if Ballew had placed the triangle 38 feet from where he did. Given this lack of evidence, it is pure speculation to suggest that the crash would have been avoided if Ballew had placed the triangle 38 feet further up the road. "One can do no more than speculate about causation here, and speculation does not defeat summary judgment." *Joe McGee Constr. Co. v. Brown-Bowens*, 368 So. 3d 1277, 1281 (¶10) (Miss. 2023).

¶19. Carter also argues that "Ballew broke the law" by violating Mississippi Code Annotated section 63-3-903 (Rev. 2022), which provides in relevant part:

9

(1) No person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of any highway outside of a business or residence district when it is practical to stop, park, or so leave such vehicle off such part of said highway. In every event, however, a clear and unobstructed width of at least twenty (20) feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred (200) feet in each direction upon such highway.

(2) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.

Carter argues that Ballew violated subsection (1) because he left his truck parked on the "paved or improved" part of the highway, though off the "main traveled part" of it.

¶20.    In addressing this statute, our Supreme Court stated at the outset of its analysis that "[t]he central principle which runs through all the cases dealing with statutes regulatory of highway traffic is that such statutes must have a practical or workable interpretation, not an arbitrary or unreasonable construction, and never that which would require an impossibility[.]" *Teche Lines Inc. v. Danforth*, 195 Miss. 226, 249, 12 So. 2d 784, 786 (1943). Interpreting section 63-3-903, the Court held,

> We know that on many of our highways one would be required to run his automobile mile upon mile before a place could be found where the machine could be entirely removed from the pavement. The statute must be given a reasonable and workable construction. *If there is proper excuse or necessity for stopping the car, it will be sufficient, if a reasonable effort be made to get it entirely off the main traveled portion of the road, or as nearly so as the circumstances will permit.*

*Id.* at 252, 12 So. 2d at 787 (emphasis added) (quoting *Colvin v. Auto Interurban Co.*, 232 P. 365, 368 (Wash. 1925)).

10

¶21.    Consistent with the Supreme Court's opinion in *Teche Lines*, Ballew moved his truck to the far edge of the shoulder and "entirely off the main traveled part of the road." *Id.* The photograph that Ballew took of the disabled truck and warning devices shows that the road was visibly wet and that the dirt-and-grass area adjacent to the shoulder sloped downward. Carter produced no evidence that Ballew could have safely moved the disabled truck off the paved shoulder—or anywhere other than where he did.[4]

¶22.    In addition, subsection (2) of the statute expressly permits a driver to leave his vehicle on a paved shoulder if his vehicle becomes "disabled while on the . . . highway" and "it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position." Miss. Code Ann. § 63-3-903(2).  Again, Carter produced no evidence that it was safe for Ballew to have parked the vehicle anywhere other than where he parked it.

¶23.    Next, Carter argues that "Ballew and C&S did not have authority to operate the commercial vehicle on the interstate" because C&S did not obtain "interstate-for-hire motor carrier operating authority" from the Federal Motor Carrier Safety Administration (FMCSA). However, C&S was registered with FMCSA as a private carrier, it had a valid United States Department of Transportation number, and Ballew was a licensed commercial driver. There is no evidence in the record that C&S *should have been* licensed as a for-hire motor carrier. Indeed, although Carter failed to produce any evidence in support of this contention, it appears that C&S is in the business of installing awnings, and when his truck broke down,

---

[4] Grill's affidavit does not make any specific claim that Ballew could or should have driven the large truck off the paved shoulder and onto the sloping grass.  Rather, he asserts that Ballew could have taken some prior action when his truck began running "sluggish." As discussed above, there is no evidentiary basis for this assertion.

Ballew was in the process of transporting C&S's own tools and equipment from the company's headquarters in Clanton, Alabama, to a job site in Louisiana. This sort of activity is not for-hire carriage.[5] In any event, Carter simply failed to produce any evidence to show that C&S should have been registered as a for-hire carrier. In addition, Carter also failed to produce any evidence that C&S's alleged failure to register as such in any way caused or contributed to the subject crash. Accordingly, this issue is without merit.

¶24. Finally, Carter argues C&S negligently failed to train Ballew. Specifically, Carter argues that C&S failed to train Ballew (a) not to continue down the highway in a "sluggish" truck and (b) regarding the proper placement of emergency triangles. As explained above, there is no evidence that Ballew proceeded in a "sluggish" truck for any length of time, that he improperly placed the emergency triangles, or that his placement of the triangles caused the crash. Accordingly, this issue is also without merit.

## CONCLUSION

¶25. The circuit court properly granted summary judgment because there is no genuine issue of material fact, and the defendants are entitled to judgment as a matter of law.[6]

---

[5] "An authorized *for-hire* motor carrier transports passengers, regulated property or household goods owned by others for compensation." FMCSA, *What is the definition of an authorized for-hire carrier?*, https://www.fmcsa.dot.gov/faq/what-definition-authorized-hire-carrier (updated May 26, 2023); *see also, e.g.*, *Am. Trucking Ass'n Inc. v. I. C. C.*, 672 F.2d 850, 851 (11th Cir. 1982) ("A private carrier does not engage in for-hire carriage; it is typically a firm that hauls its own wares in self-owned or leased trucking equipment.").

[6] Carter also argues that the circuit court erred by striking Grill's affidavit. Like the circuit court, we have considered Grill's opinions and determined that even if Grill's affidavit had not been stricken, it would not create a genuine issue of material fact that would preclude summary judgment. Accordingly, it is unnecessary to determine whether the circuit court erred by striking Grill's affidavit under Mississippi Rule of Evidence 702.

¶26.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**