[No. 28500. Department One. March 21, 1942.]

EVA SCHOFIELD, *as Administratrix, Appellant,* v. NORTH-
ERN PACIFIC RAILWAY COMPANY *et al.,*
*Respondents.*[1]

[1]Reported in 123 P. (2d) 755.

*Geo. Olson* and *George F. Hannan,* for appellant.

*Robert S. Macfarlane, Dean H. Eastman,* and *Earl F. Requa,* for respondents.

DRIVER, J.—Plaintiff, as administratrix, brought this action to recover damages for the death of her husband, Glenn W. Schofield, who was killed when the truck in which he was riding ran into the side of a freight train at a grade crossing. A trial to a jury resulted in a verdict for the defendants, and, from judgment entered thereon, plaintiff has appealed. For convenience, we shall refer to the Northern Pacific Railway Company as if it were the sole respondent.

The only error which appellant assigns is the giving of one of the trial court's instructions to the jury. Before stating the instruction, we shall summarize what we consider to be the pertinent record facts:

A mile or so west of Renton, arterial north-south state highway No. 5, paved with concrete 20 feet wide, makes a grade crossing with respondent's railroad track at approximately right angles. About one hundred sixty feet south of the crossing, the highway intersects the Longacres road, which runs parallel to the railroad. Above the center of this intersection, there is suspended a blinker traffic signal, which shows a red stop light east and west and a cautionary amber light north and south. In the last two hundred feet of its approach to the railroad crossing from the south, highway No. 5 is straight and practically level (ascending on a grade of three-fourths of one per cent). On the east side of the highway, three hundred feet south

of the crossing, there is a state highway yellow disc railroad sign. There is no other sign or signal on the south side to indicate the proximity of a grade crossing.

On the night of the accident, it was not raining and there was no fog. Mr. Schofield was a guest passenger on a truck loaded with diesel oil, which was going north on highway No. 5. The truck struck the side of the eighteenth box car of a west bound freight train of forty cars. The driver, who was also the owner of the truck, testified that he was traveling around thirty miles an hour; that the cross traffic at the road intersection south of the grade crossing distracted his attention; that he had his lights depressed and did not see the moving train until he was within forty or fifty feet of it—too late to stop and avoid a collision. He also stated that he had driven over the highway a great many times, was quite familiar with it, and knew the location of the railroad crossing; and that he did not "particularly look for a train" as he approached the crossing.

The instruction of which appellant complains reads as follows:

"The law of the State of Washington, in full force and effect at the time in question, provided in part as follows:

" 'Any person operating . . . any vehicle in which are being transported explosive substances or inflammable liquids shall bring such vehicle to a full stop within fifty (50) feet, but not less than twenty (20) feet, of any railroad or interurban grade crossing before proceeding across the same. Any person operating any vehicle, other than those specifically mentioned above, shall, upon approaching the intersection of any public highway with railroad or interurban grade crossing, reduce the speed of such vehicle to a rate of speed not to exceed that at which, considering view along such track in both directions, such vehicle can be brought to a complete stop not less than ten (10)

feet from the nearest track in the event of an approaching train.' Rem. Rev. Stat., § 6360-104 [Vol. 7A].

"A violation of a positive law is negligence, and if you find that the driver of the truck violated the above-quoted statute and that said violation was the sole proximate cause of the collision, then your verdict must be for the defendants."

The undisputed evidence was that the truck driver was transporting an inflammable liquid, and that he did not stop his vehicle at the crossing. The trial court told the jury to return a verdict for the defendants [respondent] if it found that the truck driver had violated the statute and that such violation was the *sole* proximate cause of the collision. In other instructions, the jury was fully and correctly advised that any negligence of the driver could not be imputed to the deceased, as the latter was riding as a guest in the truck; and that, if both the driver and the railroad company were negligent, and the collision proximately resulted from their combined concurring negligence, the company was liable just as if it alone had been negligent. The only question presented, then, is whether or not it was prejudicial error for the trial court to instruct the jury that violation of the statute by the truck driver was negligence.

Appellant's counsel urge that it was error to so instruct, since the driver's failure to stop was not necessarily negligence—that, they say, depended upon the surrounding circumstances; that if his not stopping was due to an extrahazardous and deceptive condition of the crossing and the failure of the respondent to give adequate warning of the presence of the crossing and of the train, then it would not constitute negligence. In this connection, they assume that the decision of this court in an earlier appeal (*Schofield v. Northern Pac. R. Co.*, 4 Wn. (2d) 512, 104 P. (2d) 324) established

the law of the case. We shall, therefore, briefly review that decision to show its relation to the present appeal.

There, the plaintiff had appealed from a judgment of dismissal upon the sustaining of demurrers to the amended complaint. We said that, as a general rule, a railroad train occupying a grade crossing in itself supersedes all other warnings and gives notice by its own presence; but we pointed out that the rule suffers an exception where the situation is extrahazardous or constitutes something in the nature of a trap, and held that the allegations of the amended complaint were sufficient to support a factual issue under the exception.

On the instant appeal, some of the charges of negligence, as pleaded, are not supported by the evidence. As the trial court, in ruling upon the motion for a new trial, aptly remarked to appellant's counsel,

"When this case was before the Supreme Court the first time it was there on the pleadings, and certainly your proof, in some particulars at least, falls far short of the allegations in your complaint."

It was alleged that the railroad track was elevated above the highway and, to cross it, the operator of a vehicle must drive up an incline, and the headlights would not show a passing train until the vehicle was very close to the track. The undisputed evidence was, as stated, that the highway at the crossing was practically level. It was also alleged that, as the train approached the crossing, no bell was rung and no whistle was sounded, and that this omission was one of the proximate causes of the accident. The trial court concluded (and the record supports its conclusion) that there was an utter failure of proof of that charge of negligence, and it was withdrawn from the consideration of the jury. There was nothing in the amended complaint to indicate that the truck in which

the deceased was riding was transporting an inflammable liquid. The decision on the former appeal enunciated the principles of law the court found to be applicable to the facts as alleged in the amended complaint. Those principles are not necessarily applicable to the different factual situation presented by the record on this appeal.

■ It is a well-settled rule that, if a statute has as its purpose the prevention of injury to persons or property, a violation thereof, which is the proximate cause of an injury, is negligence *per se*. We mentioned the rule on the former appeal of the present case when we said that failure to ring the bell or sound the whistle, as required by Rem. Rev. Stat., § 2528 [P. C. § 9091], would be negligence *per se*.

We applied the negligence *per se* rule in *Metzger v. Moran*, 1 Wn. (2d) 657, 96 P. (2d) 580, involving an automobile collision at the intersection of two streets. One of them was arterial, and defendants' car had entered it without stopping. Defendants, on appeal to this court, assigned as error the trial court's rejection of an offer to prove that the driver of their car did not know that the street was arterial, and that he could not see the arterial stop sign because it was concealed by some parked cars. Sustaining the trial court's ruling, we said, p. 660:

"When the proper authority has established an arterial highway and notified its existence to the public by the erection of a stop sign, any one approaching the arterial from an intersecting street is presumed to know that it is such and required to obey the statutory injunction to stop. He cannot be heard to say he did not know of the existence of the sign, or that he could not see it."

■ Appellant cites and particularly relies upon *Colvin v. Auto Interurban Co.*, 132 Wash. 591, 232 Pac. 365; *Cushman v. Standard Oil Co.*, 145 Wash. 481, 260

Pac. 996; *Lyle v. Fiorito,* 187 Wash. 537, 60 P. (2d) 709; *Baldwin v. Washington Motor Coach Co.,* 196 Wash. 117, 82 P. (2d) 131. These cases do not repudiate or discredit the rule that violation of a safety statute is negligence *per se.* They recognize an exception to be applied under unusual circumstances. They hold that sometimes such a statute should be given a reasonable and workable construction, and that a mere technical violation will not be regarded as amounting to negligence *per se.*

In the *Colvin* case, a truck loaded with a large steel tank, some chains, and other similar equipment was stopped on the highway because, from the noise it was making, the operator thought a part of the load was about to fall. Before halting, he had pulled over to the right side of the highway as far as possible, but the left half of the truck was still on the pavement. A stage coach collided with the rear end of the truck. This court said that the statute prohibiting the standing of a vehicle upon the main traveled portion of a highway must be given a reasonable and practicable construction, and that, if there was a proper excuse or necessity for stopping, it would be sufficient if a reasonable effort was made to get the vehicle off the main traveled portion of the highway, or as nearly so as the circumstances would permit.

In the *Cushman* case, the trial court concluded that the plaintiffs were guilty of contributory negligence as a matter of law in driving their automobile into a street intersection without first bringing it to a stop. Neither street had been designated as an arterial highway, but, under a permissive ordinance, the city had caused large stop signs to be painted on the surface of the street traversed by plaintiffs on entering the intersection. The testimony was in conflict as to whether the signs were almost washed out or were plainly

visible. Reversing the lower court, we held that it was for the jury to decide whether the signs were so obliterated that they could not be seen.

*Lyle v. Fiorito* involved a damage action against a county for its failure to maintain an arterial warning stop sign on a side road entering an arterial highway. This court held that it was the statutory duty of a county to maintain such a sign and declined to find that the driver of a vehicle entering an unmarked arterial highway without stopping was guilty of contributory negligence as a matter of law.

In the *Baldwin* case, one of the defendant's buses, in a collision with another vehicle, had knocked down an arterial stop sign at a city street intersection. A city ordinance and a state statute made it unlawful for any person to remove or destroy a traffic sign. The sign was not restored, and two days later another accident occurred in the intersection. An action for the resulting damage was brought against the bus company. On appeal to this court, the question was whether the trial court had erred in instructing the jury that the defendant would not be liable if the sign was knocked down "without negligence on its part." This court held that the instruction was proper because, under the circumstances, the violation of the safety laws was merely technical. The court said, p. 121:

"If the respondent was not gulity of any negligence in knocking the sign down and did not know that the sign was knocked down, at most it could not be guilty of more than a technical violation of the statute and ordinance in question. To excuse the respondent for this technical violation, which resulted from a cause—the negligence of Schmidt—beyond respondent's control, would not necessarily enunciate a principle inconsistent with the rule that violation of a statute is negligence *per se,* and may be taken

" ' . . . merely as an assertion of the rule that statutes are to be reasonably construed and that a

26

statutory duty may be modified by the peculiar circumstances of a particular case.' 45 C. J. 732."

In the instant case, the respondent did not maintain a warning sign or signal to the south of the grade crossing (there was a state highway grade crossing sign as stated), but it was not claimed that, in this regard, the respondent violated any statute or failed to comply with a regulation or order of any state or federal agency.

Also, as appellant points out, there is testimony in the record to the effect that, if the driver of a vehicle approaching the grade crossing from the south looked directly at the blinker signal light in the Longacres road intersection, it would tend temporarily to blind him somewhat; that it would be difficult for a driver to see the roadway for an appreciable time after he had passed under the light; and that the dark colored cars passing over the crossing would have low visibility and could not readily be seen.

We do not think these circumstances were sufficient to excuse the truck driver and convert his violation of the safety statute into a mere technical one. It was his statutory duty to stop before passing over the railroad track, *even though there had been no train approaching or upon the crossing.* He was thoroughly familiar with the highway, and he knew that there was a grade crossing just beyond the intersection blinker light. It is immaterial, then, that the light may have made it difficult for him to see the passing train. Nor do we think the statute here under consideration is one that requires melioration by judicial construction to make it reasonably workable. That portion with which we are here concerned is simple and direct in its mandate and easy to understand. Its application is not limited to those railroad crossings that are specially designated and marked, as in the case of laws pertain-

ing to arterial highways and stop streets. It requires every vehicle transporting the designated explosive substances or inflammable liquids to come to a full stop at *"any railroad or interurban grade crossing."* (Italics ours.) Under the circumstances, the truck driver's violation of the statute was negligence *per se,* and, considered in connection with other instructions given by the trial court, the instruction complained of correctly stated the applicable law.

Respondent vigorously contends that appellant has failed to adduce substantial evidence that the accident proximately resulted from any negligence of the railway company or of its agents, and, as a matter of law, the only verdict which could have been returned was one in its favor. However, in view of our conclusion that the trial court did not err in instructing the jury, it is unnecessary for us to consider the contention.

Judgment affirmed.

ROBINSON, C. J., MAIN, and STEINERT, JJ., concur.

MILLARD, J. (dissenting)—The negligence of the host driver of the truck can not be imputed to the guest. Nor can I agree that as a matter of law the truck driver was guilty of contributory negligence which bars recovery.