MAE E. ESSAM, ADMINISTRATRIX (ESTATE OF FRANK ESSAM) *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY

FRANK OLIVER *v.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and COMLEY, Js.

Argued November 9—decided December 19, 1950

*Thomas J. O'Sullivan,* with whom, on the brief, was *Edwin H. Hall,* for the appellant (named defendant).

*Charles V. James,* for the appellee (plaintiff Essam), and *William J. Willetts,* with whom, on the brief, was *George C. Morgan,* for the appellee (plaintiff Oliver).

Inglis, J. These cases arose out of a collision between a small truck and a railroad train at a grade crossing.

The plaintiff's claims of proof may be summarized as follows: Broadway Extension was a highway in the town of Stonington which extended southerly from the Boston Post Road through land owned by, and surrounding the Mystic passenger and freight stations of,

the New York, New Haven and Hartford Railroad Company, hereinafter referred to as the defendant, then across the defendant's tracks and thence to Long Island Sound. At the crossing, the defendant maintained three tracks, numbered, from north to south, 1, 2 and 6. Track 1 was used for westbound trains and track 2 for eastbound, while track 6 was a spur track. The first two were on a twenty-degree curve with its central point north of its termini. It commenced about 1500 feet easterly of the crossing. There was a whistling post for the crossing 1320 feet east of it. The roadway of Broadway Extension, except at the crossing, was black surface. As it crossed the tracks, the surface was covered by planking immediately adjacent to the rails and, for the rest of the distance, by loose stone. It was rough and uneven. At both the north and south sides there were signs which read: "PRIVATE CROSSING DANGEROUS LOOK OUT FOR TRAINS. N. Y., N. H. & H. R. R. CO." The town of Stonington accepted Broadway Extension as a highway in 1930 and maintained it from the sign at the southeast corner of the crossing southerly to the Sound. North of this portion, the defendant maintained it to its intersection with the Post Road. Prior to the accident, Broadway Extension was used by the public to a considerable extent for both pedestrian and vehicular traffic.

Sixty-seven feet south of the crossing on the west side of Broadway Extension was a brick building occupied as a shop by Frank Essam, the plaintiff Essam's intestate. He owned a 1930 Chevrolet one-ton truck which had a platform body and a cab inclosed by doors and windows. On January 22, 1947, about 1 p. m. the plaintiff Oliver, a welder, who had been called by Essam, arrived at the latter's shop. After loading some welding equipment and other material on the truck, Essam started to drive it slowly, with Oliver in the

seat beside him, in a northerly direction on Broadway Extension. As the truck went on to the crossing, a train operated by the defendant's agents was approaching from the east at a speed of forty-seven miles per hour. The engineer first saw the truck as it was approaching the south rail of track 6, which was about thirty-two feet south of the south rail of track 1, upon which the train was traveling. The train was then about 700 feet east of the crossing. The train collided with the truck and as a result Essam was killed and Oliver sustained personal injuries.

No whistle was blown and no bell was rung by the operators of the train before the collision. Although the engineer had an unobstructed view of the crossing for a distance of 2500 feet to the east of it, he did not see the truck until he was about 700 feet east of the crossing and it then flashed through his mind that the truck had time to make it over the crossing. He knew that at the speed of forty-seven miles per hour the train would go 1400 feet before it could be completely stopped in an emergency stop, but he did not attempt to slacken its speed by applying the brakes until it was 200 feet from the truck. Although the defendant knew the crossing was a dangerous one, it had not installed any devices to warn travelers of the approach of trains.

The defendant denied that Broadway Extension as it crossed the tracks was a public highway. It offered evidence to prove that the whistle on the train was sounded as the train approached the crossing and that a traveler approaching the crossing from the south had an unobstructed view of the tracks to the east for 2700 feet.

The first two contentions made by the defendant may well be considered together. They are that the court erred in finding that the plaintiffs offered evidence to prove that Broadway Extension as it crossed

the railroad tracks was a public highway and that it erred in charging the jury that the defendant had a duty under General Statutes § 5530 to blow the whistle or ring the bell on the engine as it traveled the distance of eighty rods before it reached the crossing.

It is true that there was no evidence in the case that Broadway Extension from the south boundary of the defendant's right of way northerly to the Post Road had ever been formally laid out as a public highway. A selectman of the town of Stonington testified that in 1930 the town had voted to "accept" Broadway Extension as a highway, but he did not know whether that vote applied to the way for its full length or only to that portion of it which lay south of the crossing. It was undisputed that the town kept in repair only the latter portion and that it was the defendant which maintained the road from the south side of the crossing northward to the Post Road. On the other hand, there was evidence that the public had for many years used for travel that portion of the road which extended across the defendant's property. That use had not been limited to the purpose of gaining access to the defendant's stations but was also for the purpose of going to and from several houses located south of the tracks and to and from Long Island Sound. The use had been permitted by the defendant. On this latter evidence, the jury might reasonably have found that the portion of Broadway Extension which ran over the defendant's property was a highway by dedication. See *Williams v. New York & N. H. R. Co.*, 39 Conn. 509, 519. The evidence on the question whether that portion of the road was a highway, therefore, was in conflict and, accordingly, the court did not err in finding that the plaintiffs had offered evidence that it was a highway.

General Statutes, § 5530, provides that the operator of an engine shall commence to sound the bell or whistle

thereon when the engine is approaching and is within eighty rods of the place where the railroad crosses a highway at grade and shall continue to sound them until the engine has crossed the highway. In its charge the court, after reading that statute, explained that it would be satisfied by either the ringing of the bell or the blowing of the whistle and discussed the evidence on the question whether the whistle had actually been blown. The court in this connection made no reference to the conflict in evidence as to whether the crossing involved was a highway crossing or a private-way crossing. The only impression which the jury could have been given by this portion of the charge was either that the statute required the blowing of the whistle or the sounding of the bell at every crossing, whether it was a highway crossing or a private-way crossing, or that the court was instructing them as a matter of law that the Broadway Extension crossing was a highway crossing. The charge on this subject was duly objected to.

In *Stavola* v. *Palmer*, 136 Conn. 670, 681, 73 A. 2d 831, decided in this court after the case at bar was tried, we had a factual situation closely analogous to that here and a charge relating to the provisions and the effect on the case of § 5530 almost identical with the present charge. We there held that the charge on this subject was reversible error. We come to the same conclusion here for the reasons more fully set forth in the opinion in the *Stavola* case.

The third contention made by the defendant is that the court erred in refusing to charge, as requested, that the positive testimony of witnesses that they heard the blowing of the whistle is entitled to greater weight than the mere negative evidence of persons who testified that they failed to hear it. This request was too broad to be accurate, and in any event the finding does not

disclose that any conditions were present which would require a charge on the subject.

The only other criticism of the charge made by the defendant, that it permitted the jury to find that the failure of the engineer to apply his brakes sooner than he did was a proximate cause of the collision, is without merit. It is not necessary to discuss the contention on which the defendant based its assignment of error directed to the denial of its motions to set aside the verdicts — that the plaintiffs were guilty of contributory negligence as a matter of law.

There is error in both cases, the judgments are set aside and a new trial is ordered in both.

In this opinion the other judges concurred.