STATE OF CONNECTICUT *v.* THADDEUS C. COLOMBO

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE Nos. MV 1-93352, CR 1-27552

Argued June 26—decided September 22, 1967

*John E. Smyth,* of Stamford, for the appellant (defendant).

*Martin L. Nigro,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant, after a trial to the jury, was found not guilty of passing through a

red light but was found guilty of the crime of negligent homicide in violation of § 14-218 of the General Statutes. In his appeal, he has assigned error in (1) the denial of his motion to set the verdict aside because it was against the weight of evidence, and (2) the denial of his motion to set the verdict aside because it was contrary to the law, and (3) the denial of his motion to set the verdict aside because it was inconsistent.

The jury could have found that on September 4, 1966, at approximately 3:19 a.m., the defendant, a minor, was operating his motor vehicle, a Chevrolet two-door convertible, in a westerly direction on North State Street in Stamford. At that time, John Wash was operating a Lincoln four-door sedan in a northerly direction on Canal Street, and in his car were three passengers, including Marie Coffield. The Wash car was almost through the intersection of North State Street and Canal Street when the collision with the Colombo car occurred. Marie Coffield died from injuries received in the accident. As a result of the collision, the Chevrolet came to rest on North State Street a short distance west of a gasoline station at the northwest corner of the intersection; the Chevrolet was then headed in an easterly direction. The Lincoln came to rest at a pole located at the northwest corner of the intersection, adjacent to the gasoline station, and was headed in a westerly direction. North State Street and Canal Street bisect each other at right angles; North State Street is a one-way street for traffic flowing from east to west and in this area consists of three lanes. Canal Street runs in a general north and south direction, with traffic moving in each direction. There are traffic lights controlling the flow of traffic at the intersection. The lights are so synchronized, when operating correctly, that when a green light faces North State Street traffic, a red light faces Canal

Street traffic. The lights facing Canal Street, however, operate in a delayed sequence to allow traffic proceeding northerly on Canal Street to enter westerly onto North State Street without interference from traffic entering the intersection and proceeding southerly on Canal Street. This is accomplished because the light facing the southbound traffic on Canal Street remains red for a short period while the light facing traffic proceeding northerly on Canal Street remains green.

There was evidence that some ten days prior to the day in question there had been timing difficulty with the lights but that on the day in question they were observed by an officer a few minutes after the accident to be operating normally. At the time in question it was raining and dark. As the Wash car approached the intersection, it was traveling at about ten miles per hour, and Wash testified that the light facing him was green. He was some ten or twelve feet from the light in the center of the intersection when he first observed the defendant's car approaching on his right. Marie was sitting beside him in the front seat. Wash continued on, believing the defendant would stop. Suddenly Marie yelled, "Look out," and Wash tried to speed up but at this point the collision occurred. The impact rendered Wash unconscious, and when he came to both he and Marie were lying on the ground. The damage to the Lincoln was in the area of the right rear door, and the point of impact in relation to the highways was in the northeast quadrant of the intersection. The front end and both front fenders of the Chevrolet were damaged. The defendant admitted to an officer that he was traveling at a speed of thirty-five to forty miles an hour, but at the trial he testified that he was traveling at a speed of twenty-five miles per hour and was in the center lane and that just before entering the intersection he saw lights com-

ing across the road and suddenly there was a car in front of him and he slammed on his brakes and skidded a few feet into the other car. A short distance prior to entering the intersection, he claimed, he had observed that the traffic signal facing him was red, but it had changed to green before he entered the intersection.

The first two motions to set aside the verdict are predicated upon the claims that it was against the evidence and contrary to law. Actually the defendant's first complaint is that "the verdict was against the weight of evidence." This is not a valid ground for setting a verdict aside; *State* v. *Lougiotis,* 130 Conn. 372, 375; and this assignment of error might be properly dismissed. In departing from our rules, however, we have assumed, both from argument and brief, that the defendant's claim is that the evidence was insufficient. We examine the trial court's ruling on the basis of the evidence appearing in the transcript certified to this court. Practice Book § 960. In an appeal from the rulings of the trial court, this court reviews the action of the trial court to determine whether its discretion was abused. *Brower* v. *Perkins,* 135 Conn. 675, 681. The verdict of the jury must stand if they could reasonably have reached their conclusion. *Markee* v. *Turner,* 140 Conn. 701, 705. The correctness of the denial of the motion to set aside a verdict must be tested by the evidence most favorable to the state. *Feir* v. *Hartford,* 141 Conn. 459, 463. Great weight must be given to the ruling of the trial court, and all reasonable presumptions resolved in its support. *State* v. *Bradley,* 134 Conn. 102, 109. "The concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony, is a powerful argument for sustaining the action of the trial court." *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643.

The crime of negligent homicide consists of three component elements: (1) the death of a human being (2) by the instrumentality of a motor vehicle (3) operated on the highway in a negligent manner. *State* v. *Berkowitz,* 24 Conn. Sup. 112, 116, 1 Conn. Cir, Ct. 439, 443. It was stipulated that Marie died as a result of injuries received, while she was a passenger in the Wash car, as a result of its collision with another car. No question is raised that the defendant was the operator of the other car; thus the remaining element relates to the question of the alleged negligence of the defendant. The defendant moved for a bill of particulars, and the state provided the following information: "Enclosed please find photo-static copies of the warrant [sic] and Arrest Warrant Application in the above entitled case." This method of providing information appears to have satisfied the defendant, as well it might, for the state immediately limited itself to proof of a violation of the statute substantially in the manner described. *State* v. *Scott,* 80 Conn. 317, 321; *State* v. *DiLorenzo,* 138 Conn. 281, 284. The information appearing in the warrant application, representing the police officer's impression of the alleged violation, stated that the defendant "proceeded through a red light at said intersection and was proceeding too fast for conditions." Since the jury found the defendant not guilty of passing through a red light, we will first consider the element of speed as it bears on the crime. No error is claimed in the court's charge, and so we may assume that in this respect the charge was correct. *State* v. *Mallette,* 153 Conn. 584, 587.

Although the defendant gave conflicting evidence as to his speed, the jury could reasonably find he was traveling at between thirty-five and forty miles per hour. They could further find that the intersection was in the city and it was dark and raining at

the time. The physical facts such as the point of impact, force of impact, damage to each car, and the position and location of each car after the accident in relation to the other as well as to the point of impact were all relevant factors to be taken into consideration by the jury in determining whether the speed of the defendant's car was unreasonable under the prevailing circumstances. See *Hudick* v. *Tycz,* 142 Conn. 715, 718.

"At common law there is no precise limit of speed. A driver must exercise ordinary care and drive his car at a reasonable rate of speed, and what is a reasonable rate of speed is dependent upon the circumstances of the case." 5 Am. Jur., Automobiles, § 259; Wright, Conn. Jury Instructions § 689. Our statutory regulation, § 14-219, does not go much beyond the common-law rule. It provides in part (a): "No person shall operate any motor vehicle upon any public highway of the state . . . at a rate of speed greater than is reasonable, having regard to the width, traffic and use of the highway, . . . the intersection of streets and the weather conditions." The operation of a motor vehicle in violation of this statute constitutes negligence. *Essam* v. *New York, N.H. & H.R. Co.,* 140 Conn. 319, 324. It is still an open question, however, for the jury to decide whether, in any given case, the speed of the motor vehicle "is actually unreasonable under all the circumstances." *Clement* v. *DelVecchio,* 140 Conn. 274, 277; *State* v. *Gordon,* 144 Conn. 399, 402; *Hammarlund* v. *Troiano,* 146 Conn. 470, 472.

The jury must necessarily rely upon circumstantial evidence, and they are entitled to draw reasonable and logical inferences from all the facts. *Hudick* v. *Tycz,* supra, 717. Upon the evidence and the reasonable inferences to be drawn, it cannot be said that the jury, acting fairly and intelligently, could not reasonably conclude that the state had met

its burden of proof in establishing that the defendant's speed was unreasonable and that such conduct was the proximate cause of the decedent's death. See *State* v. *Chin Lung,* 106 Conn. 701, 705; Maltbie, Conn. App. Proc. § 190. No error was committed by the court in denying the defendant's first two motions to set the verdict aside.

The defendant further assigns error in the denial of his motion to set the verdict aside because it was inconsistent. He contends that because the jury found that he did not pass through a red light, such a finding removed from the consideration of the jury the factor of speed. Such a theory is not our law. Even if it is assumed that the defendant had a green light in his favor, it was his duty to operate his car at a reasonable rate of speed. See such cases as *Labbee* v. *Anderson,* 149 Conn. 58, 61; *Gorman* v. *American Sumatra Tobacco Corporation,* 146 Conn. 383, 386; *Whipple* v. *Fardig,* 112 Conn. 402, 403. The verdict, being general, must stand if it is good on either count. *Lucas* v. *South Norwalk Trust Co.,* 121 Conn. 201, 205. We are unable to find any inconsistency presented here.

There is no error.

In this opinion KINMONTH and WISE, Js., concurred.