ROBERT S. STAUDINGER, SR., ADMINISTRATOR
(ESTATE OF ROBERT S. STAUDINGER, JR.) *v.*
PETER BARRETT ET AL.
(13351)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued April 7—decision released June 28, 1988

*Richard A. Fuchs,* with whom was *Bernard Pitterman,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom, on the brief, were *Garie J. Mulcahey* and *Donna M. Lattarulo,* for the appellees (defendants).

HULL, J. The plaintiff, Robert S. Staudinger, Sr., brought this action as administrator of the estate of his son, Robert S. Staudinger, Jr., to recover damages for wrongful death due to the alleged negligence of the defendants, Peter Barrett, Roger Connor, John Basile and the town of Bethel. The plaintiff claimed that the one vehicle accident in which his son died was caused by the high speed pursuit by Bethel Police detectives, Barrett and Connor, of the vehicle his son was driving. The jury returned a general verdict for the defendants, the plaintiff having failed to request that interrogatories be submitted to the jury. The plaintiff appeals from the judgment on the verdict, claiming that the trial court erred (1) in refusing to charge the jury that a violation of the Bethel police department's policy governing high speed automobile chases was negligence per se, and (2) in denying the plaintiff's motion for a directed verdict on the defendants' special defense of contributory negligence. Because of the general verdict rule we find no error.

The material facts of this tragic accident are not in dispute. On the evening of September 10, 1982, shortly before 9:50 p.m., Barrett and Connor were on patrol in an unmarked police car. Barrett was driving. They were proceeding west on route 6 in Bethel when Barrett noticed a maroon Chevrolet El Camino traveling east on the same road. An El Camino is a vehicle that has a cab like the front of a passenger car and a cargo area like a pickup truck. Barrett observed that there were some teenaged boys riding in the cargo area and hanging over the sides. He did not see the driver. He made a u-turn to follow the El Camino so he could issue a warning to the driver to keep his passengers inside the vehicle or to stop them from moving around. Before Barrett reached the other car, it made a u-turn, proceeded west on route 6 and entered a shopping plaza. Barrett followed. The El Camino continued to the area

behind the stores. When it did not reappear, Barrett drove the police car to the rear of the stores from the opposite direction. He stopped the car about fifty feet from the El Camino. Connor engaged a red flashing light and placed it on the dashboard while Barrett turned on the car's red grill lights and switched the siren on and off several times. At that point, the El Camino abruptly drove toward the police vehicle, swerved and almost hit it. It then traveled over a grassy area and sped out of the parking lot.

Barrett pursued the El Camino through Bethel and into Newtown, over a distance of five miles. During the chase, both cars attained speeds as high as seventy to seventy-five miles per hour and, at all times, were traveling well above the posted speed limits. In addition to speeding, the El Camino crossed solid lines, passed other vehicles in no passing zones and went through a stop sign and a red light.

About halfway through the chase, Connor was able to read the El Camino's license plate number. He radioed the number to the dispatcher at the Bethel police department. Before the El Camino crashed, the dispatcher had obtained the name and address of the car's owner and had determined that it had not been reported stolen. She was instructed by another police officer that she should wait for Connor or Barrett to request this information. Neither officer asked for it, thus, she never transmitted it to them.

Further on, the El Camino stopped at an intersection and the police car pulled alongside it on the left. Connor attempted to get out of the car but the El Camino drove toward it and Barrett had to back up the police car to avoid a collision. The El Camino again fled and Barrett resumed the pursuit. Finally, the vehicles turned south on Hattertown Road in Newtown. Hattertown Road is straight for about one quarter mile and

then becomes hilly and winding. Both vehicles were traveling at fifty to fifty-five miles per hour; Barrett believed that the posted speed limit was twenty-five miles per hour. Barrett estimated that, on Hattertown Road, he never got closer to the El Camino than 90 to 100 feet, although, according to two witnesses, the two vehicles were seen on Hattertown Road to be only one or two car lengths apart. Because Barrett lost sight of the El Camino, he did not see the accident. The El Camino had rounded a curve and struck a rock outcropping on the shoulder of the road, then careened across the road striking a utility pole and a stone wall before coming to rest. The crash killed the plaintiff's decedent, who was driving the car, and the three boys who were riding in the cargo area. There were two other boys riding in the passenger compartment with the driver. One was seriously injured and the other sustained only minor injuries.[1]

At the time these events occurred, the Bethel police department had in place a policy governing high speed automobile chases.[2] Under its guidelines, such chases

---

[1] Actions for personal injuries and/or wrongful death of the El Camino's passengers were also brought against the defendants. Of these cases, only the action brought by Joseph Roberto was tried to a verdict, together with the present case. The jury in Roberto's case returned a verdict in favor of the defendants. Roberto did not file an appeal.

[2] "BETHEL POLICE DEPARTMENT

"RICHARD X. CARLO, Chief of Police

"PLUMTREE RD., BETHEL, CONNECTICUT 06801

"September 19, 1977

"TO:     All Bethel Police Officers
"FROM: Chief Richard Carlo
"RE:     DEPARTMENTAL POLICY—
            HIGH SPEED CHASE

"The following will be considered departmental policy in all cases of a high speed chase:

• No high speed chase should be encouraged unless absolutely necessary, and then only in compliance with the law.

were discouraged unless absolutely necessary and were not to be predicated on misdemeanors or on motor vehicle violations except driving under the influence or evading responsibility with respect to an automobile accident in which serious physical injuries had been sustained. High speed pursuits were permitted in situations involving dangerous felonies. Such pursuits were to be avoided unless the police officer considered the person pursued to be such a clear and present danger to others as to offset the danger created by the speeding vehicles. Further, a high speed chase was to be terminated when the risk of accident surpassed the possibility of apprehending the person pursued.

The plaintiff brought this action alleging that the defendants Barrett and Connor had violated the Bethel police department's policy governing high speed chases, both in initiating the pursuit and in continuing it; that the defendant Bethel police chief, John Basile, was negligent in supervising his police officers and in enforcing the high speed pursuit policy; and that, since the defendants were acting in the scope of their employment, the town of Bethel was liable for their negligence.

---

- No motor vehicle violation, with the possible exception of driving under the influence or evading responsibility with serious injuries, and no misdemeanors shall be the basis for high speed pursuits.
- High speed pursuits are allowed only to the extent of the crime involved, and then only when dangerous felonies are involved such as murder, armed robbery, manslaughter, rape, etc.
- High speed chases are to be avoided unless, in the opinion of the officer, the person being pursued presents such a clear and present danger to others so as to jusify or offset the danger involved from the speeding vehicles. The opinion of the officer as to the need to pursue shall be based upon reasonable and reliable information or knowledge and not on a mere suspicion.
- All pursuits, regardless of the nature of the crime, shall be conducted with due regard for the safety of all persons and property as required by law. All pursuits will be abandoned when the risk of an accident outweighs the possibility of apprehension.

"Chief Carlo"

The defendants denied they were negligent and, as a special defense, asserted that the proximate cause of the plaintiff's decedent's death was his own negligence in operating the vehicle after drinking alcoholic beverages and while his ability to drive was impaired, in driving at too high a rate of speed, in driving at excessive speeds to evade the police vehicle, in operating the car recklessly, in failing to keep a proper lookout, in failing to heed the police officers' warnings, in failing to keep his car under control, in failing to drive in an established lane of travel, in operating the vehicle with inadequate or defective brakes and/or failing to apply the brakes in a timely and proper manner, in refusing to stop or slow his vehicle when asked by the police to do so and in violating General Statutes §§ 14-218a (traveling unreasonably fast), 14-230 (vehicle to be driven in the right hand lane), 14-219 (speeding), 14-235 (vehicle not to be driven on left side of highway on curve or upgrade) and 14-222 (reckless driving).

The jury returned a general verdict for the defendants. The plaintiff on appeal claims that the verdict was in error in one of two respects: either because the trial court erred in its charge on the chase policy or because it erred in refusing to direct a verdict with respect to contributory negligence. The defendants argue, and the plaintiff concedes, that, under the general verdict rule, if either of the plaintiff's grounds for appeal is found by this court to be unmeritorious, then the general verdict must stand.

The general verdict rule provides that where the jury renders a verdict for one party and no party requests interrogatories, we presume that the jury found every issue in favor of the prevailing party. *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987). This rule applies whenever a verdict for one party could reasonably have been rendered on one or more distinct causes of action or distinct defenses. Id.

The defendants' denial of negligence and their allegations of contributory negligence constitute two discrete defenses, either of which could have supported the jury's general verdict. *Stone* v. *Bastarache,* 188 Conn. 201, 205, 449 A.2d 142 (1982). The verdict might have been predicated on the defendants' freedom from negligence or on the plaintiff's comparatively greater negligence. *Kalleher* v. *Orr,* 183 Conn. 125, 127, 438 A.2d 843 (1981). In light of the plaintiff's failure to request interrogatories to ascertain the basis of the jury's verdict, we must uphold it, under the general verdict rule, if either defense is legally supportable. Id. Further, if the trial court's instructions to the jury are shown to be proper and adequate as to any of the defenses raised, the general verdict must stand, regardless of error, if any, in the charge as to any other defense. *Stone* v. *Bastarache,* supra; *Meglio* v. *Comeau,* 137 Conn. 551, 553–54, 79 A.2d 187 (1951).

The plaintiff had requested that the trial court charge the jury that violation of the Bethel police department's high speed chase policy was negligence per se. The court denied the request and instructed the jury that it could consider such violation, if any, evidence of negligence.[3] The plaintiff contends that the trial court's failure to instruct the jury as requested was prejudicial error.

---

[3] The court charged the jury as follows: "It is for you, the jurors, to decide whether the conduct of the defendants was reasonable under all the circumstances existing at the time. In making this determination, you must determine whether defendants Mr. Barrett and Mr. Connor acted reasonably with respect to this high-speed pursuit or chase. You may consider the Bethel pursuit policy as evidence of the standard of care to which the defendant[s] Barrett and Connor should be held. If you do find that the defendants failed to follow the pursuit policy, you may consider that as evidence of negligence. However, even if you find that Barrett or . . . Connor failed to follow the policy, that does not mean that such defendant was negligent per se. It is simply evidence for you to consider, along with all the other evidence before you, in determining whether each defendant acted as an ordinarily prudent police officer under the circumstances. If you find

The doctrine of negligence per se serves to superimpose a legislatively prescribed standard of care on the general standard of care. *Wendland* v. *Ridgefield Construction Services, Inc.,* 184 Conn. 173, 178, 439 A.2d 954 (1981). To establish negligence in a negligence per se case, the jury need only decide whether the defendant violated the relevant statute or regulation. Id.; *Citerella* v. *United Illuminating Co.,* 158 Conn. 600, 607–608, 266 A.2d 382 (1969); *Essam* v. *New York, N.H. & H. R. Co.,* 140 Conn. 319, 324, 99 A.2d 138 (1953).

General Statutes § 14-283a (b),[4] enacted in 1978, mandates that the police department of each municipality adopt a high speed pursuit policy establishing allowable driving, support and other police tactics. The plaintiff argues that the Bethel policy was adopted to comply with the legislature's command and thus has the force of a statute, the violation of which requires

---

that the defendants did act in accordance with the pursuit policy, that is evidence that the defendants acted in accordance with the standard of care required of police officers with respect to the conduct of high speed pursuits. The same—if you find that by the fair preponderance of the evidence proves [sic] that Barrett or Connor or both violated the Bethel high-speed chase policy, then you must determine whether the actions or failure to act were such as a reasonably prudent policeman under the same circumstances would have committed, and if not, that such actions were negligent and, if negligent, then you must determine whether the fair preponderance of the evidence proves that such negligence was a proximate cause—a substantial factor causing the plaintiffs' injuries and losses. If so, then the plaintiffs are entitled to a verdict against these defendants."

[4] "[General Statutes] Sec. 14-283a. PURSUIT DEFINED. POLICY FOR HANDLING HIGH-SPEED CHASES TO BE ADOPTED. (a) As used in this section, 'pursuit' refers to an attempt by a police officer in an authorized emergency vehicle to apprehend one or more occupants of another moving motor vehicle, when the driver of the fleeing vehicle is attempting to avoid apprehension by maintaining or increasing his speed or by ignoring the police officer's attempt to stop him.

"(b) Each police department in a municipality with an organized police department shall adopt a policy for handling pursuits and the commissioner of public safety shall adopt such a policy for the officers responsible for law enforcement in municipalities in which there is no organized police

a jury instruction on the doctrine of negligence per se. The defendants counter that the policy, which was written by former police chief Richard Carlo in 1977, was merely reviewed by the defendant Basile in 1978. They maintain that the policy was not itself a statute, nor was it enacted as a municipal ordinance or promulgated as a regulation and, therefore, does not have the force of law. Accordingly, they argue, its violation does not warrant a negligence per se instruction, and the trial court was correct in instructing the jury that violation of the policy was evidence of negligence.

There was evidence produced to show that the chase policy had been violated. Barrett admitted that his conduct in initiating and continuing a high speed pursuit had been subject to the guidelines enunciated in the Bethel police department policy. He conceded that when he encountered the El Camino in the shopping center, he had not witnessed any motor vehicle violations, had no suspicion that the driver was operating the vehicle under the influence of alcohol or drugs or was evading responsibility for serious injury, and did not suspect that any misdemeanor or dangerous felony had been committed. He asserted that he pursued the El Camino because, in his estimation, it was being driven recklessly as it exited the shopping center and the driver presented a clear and present danger to others on the highway.

Robert DiGrazia, the plaintiff's expert witness on the subject of police pursuits, concurred with Barrett that

department, and for all other state police officers. Such policy shall specify which driving, support and other police tactics may be employed in the case of a pursuit. The chief of police or commissioner of public safety, as the case may be, shall inform each officer within his department and each officer responsible for law enforcement in a municipality in which there is no such department of the existence of the policy of pursuit to be employed by any such officer and he shall take whatever measures that are necessary to assure that each such officer understands the pursuit policy established."

the decedent's operation of the El Camino upon leaving the shopping center was reckless. He also testified, however, that, while it was proper for the police to follow the El Camino when it left the shopping center, there existed none of the authorized reasons for initiating a chase at high speed. DiGrazia further stated that once the chase started, Barrett should have continually evaluated the circumstances with reference to the age of the driver, the road conditions, the type of road, the lighting conditions and the speed of the vehicles. He posited that, in view of the lapse of time since Connor had transmitted the license plate number to the dispatcher, he should have retrieved the owner information from her, and that possession of such information would have provided an alternative means of tracing and apprehending the driver. DiGrazia asserted that the chase should have been abandoned when the vehicles stopped at the intersection, in light of the driver's continuing reaction to the approach of the police. He lent particular emphasis to the length of the chase, noting that the longer it continued, the greater the likelihood that an accident would occur.

We consider it reasonably possible that the jury could have found that Barrett had violated the chase policy. Our review of the record, however, discloses no evidence of charter provisions pertaining to Bethel's procedures for adopting regulations for the police department. Thus, we cannot determine whether the Bethel police department adopted the high speed chase policy within the contemplation of General Statutes § 14-283a (b). Accordingly, we are unable to ascertain, on this record, whether a negligence per se instruction was required. In any event, if the defendants have sufficiently established the decedent's contributory negligence, then the defendants' negligence would be irrelevant and any error in the trial court's instruction on the status of the chase policy would be vitiated.

With respect to the defense of contributory negligence, the plaintiff does not claim error in the court's instructions, but argues that there was insufficient evidence to present the jury with a question of fact as to the impairment of the decedent's ability to operate a motor vehicle because of his consumption of alcohol, and the court, therefore, erred in denying the plaintiff's motion for a directed verdict on this issue. Our review of a trial court's refusal to direct a verdict requires that we consider the evidence, including the reasonable inferences that may be drawn from it, in the light most favorable to the party who prevailed at trial, giving particular weight to the coincidence of the judgments of the judge and jury, who saw the witnesses and heard the testimony. *Bound Brook Assn.* v. *Norwalk*, 198 Conn. 660, 667, 504 A.2d 1047, cert. denied, 479 U.S. 819, 107 S. Ct. 81, 93 L. Ed. 2d 36 (1986).

The following evidence pertaining to impairment was adduced at trial. Newtown police officer Henry Stormer testified that, between 7:30 and 8 p.m. on the night of the accident, he stopped at the gas station in Newtown, where the decedent was working, to wash the windows on his patrol car. While there, he saw the decedent with a group of gas station employees and other people and noticed that the decedent was holding a can of beer in his hands.

Joseph Roberto, who was a passenger in the El Camino at the time of the accident, testified that the decedent had given him money to buy beer and that he had bought two cases of twelve ounce bottles of beer. There were forty-eight bottles in all. Roberto and two of the other teenagers who were later victims of the accident, returned to the gas station with the beer at approximately 7:30 p.m. and put the beer in the cargo area of the El Camino. The three boys each drank one or two beers at the gas station and left, taking some beer with them, having arranged to meet the decedent

later. The decedent arrived at the meeting place with fewer bottles of beer than the boys had left in the El Camino. At approximately 9 p.m., the decedent and his friends went to a parking lot where they drank some of the beer. Roberto saw the decedent drink two or three beers. Before the accident occurred, all the beer had been consumed.

Eugene Baron, an accident reconstruction expert who appeared for the defendants, opined that the curve where the accident occurred could have been safely negotiated at a speed in excess of sixty miles per hour by a vehicle in the same class as the El Camino. He estimated that the El Camino had been traveling at approximately fifty-five miles per hour when it struck the rock outcropping. He stated that driver error and inattention caused the car to drift off the road into the rock.

The plaintiff argues that there was no evidence of a causal connection between the decedent's consumption of alcohol and the accident, no testimony that his ability to drive was impaired by alcohol and no evidence that the decedent had manifested any signs of impairment, such as staggering or slurred speech. He further asserts that Barrett testified that he had no suspicion that the decedent had been driving under the influence of alcohol.

We conclude, however, that the evidence was sufficient to raise a question of fact as to whether the decedent's ability to drive was impaired by his consumption of alcohol. It was undisputed that the decedent had been drinking beer within one hour before the accident. Whether the decedent's judgment and concentration might have been affected by his consumption of beer so close to the time of the accident was a matter within the common experience of reasonable persons. We cannot say, as a matter of law, that reasonable minds

could not differ as to whether the decedent's ability to drive was impaired. See *Way* v. *Pavent,* 179 Conn. 377, 380, 426 A.2d 780 (1979). It was proper, therefore, for the court to have submitted the issue to the jury. Id., 381.

As a consequence of the general verdict rule, we must presume that the jury found for the defendants on the special defense of contributory negligence. Since we find no error in the trial court's refusal to direct the verdict, we must uphold the verdict, regardless of error, if any, in the court's charge on the high speed chase policy. See *LaFleur* v. *Farmington River Power Co.,* 187 Conn. 339, 342–43, 445 A.2d 924 (1982).

There is no error.

In this opinion the other justices concurred.